MODERN  WOODMEN  OF  AMERICA  v.  LILLIAN  VON
WALD.

#### No. 205.

1. LIFE INSURANCE—*suit on policy, witness testifying as to de-
ceased's last illness, cross-examination as to when he was
previously ill proper.* In an action upon a certificate of mem-
bership in a fraternal order, to recover benefits payable thereun-
der to the wife upon her husband's decease, where the defense is
that the answers of the deceased to the questions contained in the
application for membership were false, and that the applicant had
at the time of the making of the same a disease called tuber-
culosis of the lungs, or consumption, of which disease he died
within six months after making such application, and where the
plaintiff testifies in her own behalf that her husband was taken
sick with his last illness some time in April and died in June, it is
proper on cross-examination for the defendant to inquire of her

232 MODERN WOODMEN v. VON WALD.

N. Dept.          Opinion.   Mahan, P. J.          6 Kan. App.

when, immediately prior to April, was he ill, before this last illness, which she alleges began in April.

2. ———— *defense may show deceased used medicine for consumption within sixty days after making application for.* In such case it is competent for the defendant to show that the deceased was, within sixty days after his application, using medicine or treatment for such disease.

3. ———— *proofs of death furnished by plaintiff competent evidence in behalf of defendant.* Where proofs of death are required by such fraternal order to be made to it before any right to recover for such benefits should accrue to the claimant, proofs of death furnished by the plaintiff are competent evidence in behalf of the defendant, and it is error for the court to reject them.

4. ———— *truth of answers in application for, made part of contract, materiality conclusively presumed.* Where the applicant in such case expressly, in the body of the application as well as in the certificate, warrants the literal and exact truthfulness of all his answers contained in such application, and the application is made a part of the contract, and it is expressly declared therein that the application is the basis of the contract, and that the certificate is issued upon the express condition of the literal and exact truthfulness of the answers therein contained, such questions and answers become material; and where there is a condition in the certificate that it shall be void in case of the untruthfulness of any of these answers, neither the court nor the jury is at liberty to inquire into the materiality of the questions and answers, and unless they are true the beneficiary cannot recover.

Error from Marshall District Court. Hon. R. B. Spilman, Judge. Opinion filed July 20, 1897. *Reversed.*

*J. G. Johnson,* for plaintiff in error.

*J. A. Broughten,* for defendant in error.

MAHAN, P. J. This was an action upon a membership certificate, to recover two thousand dollars for the death of the plaintiff's husband. The defense made by the plaintiff in error was that the answers to the interrogatories contained in the application of the deceased for insurance were untrue ; that by the terms

of the contract the application was made a part of the policy, and that the deceased warranted each answer to the interrogatories in the application to be literally and exactly true.   The certificate of membership was issued to the deceased, and he became a member of the society, the third day of January, 1894.   The latter part of February, 1894, he was seriously ill, and in April, 1894, as early as the ninth or tenth of April, he was confined to his bed with what the physicians testified to be tuberculosis of the lungs.   He died on the eighteenth of June, 1894, of this disease.   Among the interrogatories in the application, which he was required to answer, were the following : "Answer yes or no to each of the following questions :  Have you ever had difficult, excessive, or scanty urinations, or any disease of the genital or urinary organs?"   Ans. "No."   "Have you had any disease of the lungs?" Ans. "No." "Bronchitis?" Ans. "No." "Have you ever had any serious illness, local disease, or personal injury?"   Ans.   "No."   "If so, explain fully?" "Have you consulted a physician in the last seven years?"   Ans.  "No."

The defendant company insisted that the answers to each one of these interrogatories were untrue ; that at the time the certificate was issued, at the time the application therefor was made, the deceased had tuberculosis of the lungs ; that within the time named in the application he had *la grippe* and had been treated therefor, and had had the mumps and had been treated therefor ; and that in the preceding year of 1893 he had not only consulted his father, a physician, who usually attended him, but had consulted Doctor Dean, of Kansas City.

In the examination in chief of the plaintiff, she was asked by her counsel when her husband was taken sick

234    MODERN WOODMEN v. VON WALD.

N. Dept.          Opinion.  Mahan, P. J.          6 Kan. App.

with his last illness, and she answered that it was in
April.    There was evidence that he was seriously ill
in February, his strength much impaired, that he
was considerably emaciated, and that he continued to
decline in health very rapidly until he was confined
to his bed, in April.  Upon cross-examination, counsel
for plaintiff in error again asked the plaintiff, "When
was it you say that he was taken down with his last
illness?" and she repeated her answer, "Some time in
April; I couldn't say just when."   Counsel for plain-
tiff in error then asked her, "When was he ill before
that?"   To this question the plaintiff's counsel ob-
jected for the reason that it was not proper cross-
examination, and was incompetent, irrelevant, and
immaterial; and they now contend that defendant's
counsel were seeking to interject into the case, by
way of cross-examination, a part of the defense.
This is not necessarily so.   The question was based
upon her examination in chief as to when her husband
became ill, and it was a proper investigation by coun-
sel for defendant, as throwing light upon the fact as
to when he did become ill.   The claim of the plaintiff
was that her husband did not become ill until in April.
The claim of the defendant was that he was ill before
that, and had been ill from the time the application was
made until his decease.   It was competent for the de-
fendant to cross-examine the plaintiff upon this branch
of the case—she having been interrogated by her
own counsel as to when her husband became ill with
his last sickness—to show that she was mistaken,
and that he had been ill at all times since the making
of the application for insurance.   The question upon
cross-examination was a proper one and should have
been allowed.   This is the first assignment of error.

    The second assignment of error is in relation to the

testimony of Doctor Wilson, one of the physicians who
attended the deceased in his last illness.  This wit-
ness testified that he visited the deceased some time
in February—the latter part of the month of Feb-
ruary, 1894—and found him exceedingly ill; that he
made no careful examination of him; that he was not
called, but made a voluntary visit to the deceased;
that in the latter part of deceased's sickness he was
called in as a consulting physician, and examined
him again, more critically; that upon his first exami-
nation he did not discover any evidence of tubercu-
losis of the lungs, but found he was using at that
time a treatment called "Amick's Cure for Consump-
tion."  Defendant's counsel then asked the witness
what this "Amick's Cure" was used for, to which
counsel for plaintiff objected, the objection being sus-
tained on the ground that the question was incom-
petent, irrelevant, and immaterial.  If the deceased,
in the latter part of February, within sixty days after
his application for membership, was using a remedy
for consumption, it was relevant and material for the
defense to show that fact.

The fourth assignment of error is based upon the
same subject-matter.  The defense called Doctor Von
Wald, the father of the deceased, and in the course of
his examination counsel for defendant asked him if
he had procured for his son the Amick cure for con-
sumption.  The plaintiff objected to this question
unless it was confined to a date prior to the applica-
tion for membership.  This objection was sustained
by the court.  Counsel for defendant then asked if
the witness had procured this remedy for the use of
his son between the date of the issuing of the certifi-
cate and the last of February, 1894; that is, within
sixty days next after the issuing of the certificate of

membership. To this counsel for plaintiff objected, as the time was fixed after the contract of admission to membership, and the objection was sustained by the court. It was a proper matter to show to the jury, under the contention of the defendant company, that the answers in the application were not true at the time they were made. Answers to the above questions might have afforded some evidence of this, the weight of which would have been for the jury to determine.

The third assignment of error is based upon the refusal of the court to permit the defendant to read in evidence to the jury the proofs of death furnished by the plaintiff under the conditions of the certificate, and as an act necessary to be done by her in order to sustain her action. These proofs of death were competent evidence, and the defendant company had a right to use them in the case as evidence. It was error to reject them. *Insurance Company v. Rodel,* 95 U. S. 232 ; *Insurance Company v. Higginbotham,* 95 id. 380 ; *Edgerly v. The Farmers' Ins. Co.,* 43 Iowa, 587 ; *Insurance Company v. Newton,* 22 Wall. 32.

The fifth assignment of error is, that the court erred in overruling the defendant's demurrer to the plaintiff's evidence. It is not necessary to consider this assignment.

In the court's instruction to the jury is the following :

" *Sixth.* The tenth question in said application is as follows : ' Have you ever had any serious illness, local disease, or personal injury?' to which the answer is ' No.' In considering this question, the adjective ' serious ' is to be taken as referring to the words ' local disease ' and ' personal injury ' as well as the word ' illness ' which immediately follows it. And if you believe from the evidence that the answers made

MODERN WOODMEN v. VON WALD.        237

July 20, 1897.        Opinion.    Mahan, P. J.        C. Div.

by said applicant to said question were untrue — that is, if you believe that he ever had any serious illness, any serious local disease, or any serious injury — then plaintiff cannot recover in this action ; and this would be true, even if such illness, disease or injury had nothing to do in causing the death of said applicant.''

Upon this point in the case the defendant asked the court to instruct as follows :

'' 13. If you believe from the evidence that Alfred G. Von Wald had an ailment or local disease, known as the mumps, about two years prior to the thirteenth day of December, 1893, then the plaintiff cannot recover, and your verdict must be for the defendant.''

'' 17. You are instructed that, if you believe from the evidence that the deceased, Alfred G. Von Wald, had *la grippe* and was treated therefor by his father, Doctor Von Wald, within seven years next preceding December 13, 1893, then the plaintiff cannot recover, and your verdict must be for the defendant.''

These instructions were refused by the court, and the one numbered sixth, above quoted, was given in lieu thereof. It is conceded that the answers to these questions, the truthfulness of the answers, the literal exact truthfulness, was made a warranty upon the part of the assured upon which he was admitted to membership. It is well settled, as we understand the law, that it is immaterial whether the applicant knew that his answer was false. It is immaterial whether he intended to defraud the company or not. It makes no difference whether the fact was a material fact or not. Making it a warranty upon the part of the assured made it material, and the parties both elected thereby to make it material. Its falsity defeated the contract ; or, in other words, by reason of the falsity of the answer there never was any contract. It was an error upon the part of the court to say to the jury

that the adjective "serious," qualifying the word "illness," also applied to the other parts of the interrogatory. The parties did not so apply it in the framing of the contract, and the court had no right to interpolate it.

The court in the seventh instruction also said to to the jury :

"*Seventh.* Question number 14 is as follows : 'Have you consulted a physician in the last seven years?' and the answer to it, 'No.' The consultation referred to in this question must be taken to mean a consultation in regard to some indisposition of an apparently grave character. An inquiry of a physician in regard to some slight ailment of a trivial or merely temporary character, would not be within the meaning of this question."

This is importing into the contract a condition not put there by the parties. The defendant company had a right to know truthfully whether the deceased had consulted a physician for any purpose, and whether the consultation was in regard to some grave indisposition or a slight ailment. The question was, "Have you consulted a physician?" It was important for the company to know. It had a right to inquire for itself with regard to whether it was a grave indisposition, a serious illness, or a slight ailment, before entering into the contract. The answer gave the company no opportunity to do this. The literal, exact truthfulness of the answer was made a warranty in the contract, upon which it was based ; it was so agreed in the body of the contract. Evidence was offered tending to show that on three several occasions, within a year prior to the application, the deceased had consulted at least three different physicians, including his father. Upon this branch

of the case the defendant company asked the court to instruct the jury as follows :

"3. If you believe from the evidence that, in reply to the question in the application of Alfred Von Wald, number 14, "Have you consulted a physician in the last seven years?" he answered "No," and you find that he had consulted a physician within that time, then the plaintiff cannot recover and your verdict must be for the defendant."

"7. If the jury believe from the evidence that at any time within seven years next prior to the thirteenth day of December, 1893, said Alfred G. Von Wald consulted and was professionally treated by his father, Dr. George Von Wald, for any ailment whatever, the plaintiff cannot recover and your verdict must be for the defendant.

"8. If you believe from the evidence that at any time within seven years next preceding the thirteenth day of December, 1893, said Alfred G. Von Wald consulted and was treated professionally by Doctor Wilson, of Marysville, Kan., for any ailment whatever, then the plaintiff cannot recover and your verdict must be for the defendant.

"9. If you believe from the evidence that at any time within seven years preceding the thirteenth day of December, 1893, said Alfred G. Von Wald consulted or was examined by Doctor Dean, of Kansas City, Mo., either at his own request or at the request of Dr. George Von Wald, his father, in his, Alfred G. Von Wald's presence, then the plaintiff cannot recover and your verdict must be for the defendant."

These instructions were refused and the refusal excepted to, and the only instruction given upon this proposition in the case was the seventh instruction, which we have already quoted, and the eighth, as follows :

"*Eighth.* Bearing in mind the explanation given in the last instruction, if you believe from the evidence that the answer made by said applicant to question 14

was untrue, then plaintiff cannot recover in this action and your verdict should be for the defendant."

That is, if the jury believed that the matter about which the deceased consulted Doctor Wilson was a grave and serious indisposition, or the matter about which he consulted Doctor Dean at Kansas City was a grave and serious indisposition, then the answer would be untrue ; but that, notwithstanding he had consulted these physicians and also his father, unless the jury believed from the evidence that the deceased had some grave indisposition at the time he sought the physicians' advice, the answer was not untrue. This was a modification of the contract not warranted upon the part of the court, and was error prejudicial to the rights of the defendant company. The court likewise erred in refusing to grant to the defendant a new trial.

The judgment is reversed, with instructions to the lower court to grant a new trial.