CHARLES A. JOHNSON v. THE MASSACHUSETTS BENEFIT ASSOCIATION *et al.*

No. 660.    (59 Pac. 669.)

LIFE INSURANCE — *Application — Warranty — Waiver of Forfeiture.* Any untrue statement in an application for insurance, when made a part of the policy, and by the insured warranted to be true, avoids the policy of insurance, regardless of the question of its materiality; yet the insurance company may by its conduct waive its right to insist upon such forfeiture. The acceptance and retention of money in payment of premiums after the insurance company has knowledge of all the facts constitutes such waiver.

Error from Douglas district court; S. A. RIGGS, judge. Opinion filed January 4, 1900. Reversed.

STATEMENT.

THIS case was tried by the court, a jury having been waived, at the May term, 1897, of the district court of Douglas county. The court made special findings of fact and conclusions of law, as follows:

"1. On the 20th day of September, 1881, the plaintiff, Charles A. Johnson, made application to the Ohio Valley Protective Union for insurance upon his life, and soon thereafter a policy of insurance in the sum of $2000 was issued to him upon said application by the said company.

"2. At the time of such application Dr. A. G. Abdelal was the medical examiner of said company at Lawrence, and he filled in the written parts of said application. The plaintiff stated his age in years correctly to Doctor Abdelal at the time, but did not state to him the year and month and day of month of his birth.

"3. Charles Johnson was born on the 18th day of December, 1849. The application to the Ohio Protective Union contains a statement in the handwriting of Doctor Abdelal that plaintiff was born on the 18th day of December., 1850.

"4. On the —— day of August, 1890, the plaintiff made application for transfer of his insurance from the Ohio Valley Protective Union to the defendant company, and the defendant company required of said plaintiff a new written application for such transfer, and a new examination by its local medical examiner, who was at that time Dr. Richard Morris.

"5. On the 23d day of August, plaintiff was examined by Doctor Morris; then and there made and reduced to writing is a printed and written statement which is in words and figures as follows:

"'APPLICANT'S WARRANT.—I hereby warrant that my answers to the above questions put by the medical examiner are correct and true, and that I am the person who signed the application on the opposite side, and was examined as above.

CHARLES A. JOHNSON, *Applicant.*'

"6. 'The application on the opposite side,' which is referred to in the applicant warrant, is an applica-

tion for transfer from the Ohio Valley company to the defendant company, is dated August 26, 1890, and has the name Charles A. Johnson subscribed thereto as applicant.     In this application it is written that Charles A. Johnson was born on the 18th day of December, 1850.

" 7.  The plaintiff did not sign his name to such application for transfer and did not write the answers to the printed questions contained in such transfer, and does not know, nor does it appear in evidence, who wrote in said answers or signed plaintiff's name thereto.

" 8.  On the 4th day of September, 1890, the defendant company, on such application and medical examination, executed and delivered to the plaintiff its policy of insurance, a copy of which is attached to the plaintiff's petition.

"9.  The medical examiner's report, together with the plaintiff's statement thereunder written called 'Applicant's Warrant,' and the application for transfer on the opposite side of the sheet from the examiner's report, are all set out in the policy, which was issued by the defendant to the plaintiff, and they and each of them, as well as the statement made by and on behalf of the plaintiff in his application to the Ohio Valley company, were by the terms of said policy made the basis of the contract therein expressed and a part thereof.

" 10.  The policy which was issued by defendant to the plaintiff as aforesaid provided as follows : 'In the event, however, of said member becoming totally and permanently disabled, and the determining of such disability to the satisfaction of the medical director and board of directors of this association, and upon the surrender to said association of this policy and the cancelation of the same, there shall be paid to said member, if he shall so request in writing, in full discharge and settlement of all claims under this contract, the sum of $1000.'

"11.  The plaintiff paid all dues and premiums down to and including the bimonthly premium which

Johnson v. Benefit Association.

was due in July, 1896, and payable at any time before August 1, 1896.

"12. The policy sued upon has printed upon it as follows : 'The conditions and rules upon which the policy is issued by the association and accepted by the said member are the following.' And among the conditions and rules so printed is one as follows : 'Thirteenth : Each applicant to become a member must sign the association's form of application therefor, filled out by himself or some one on his behalf, pass satisfactory examination by one of the association's regularly appointed medical examiners, and pay to him his fee for such examination ; and this policy shall not become operative so as to bind the association until the membership fee is paid and his policy is actually delivered to the member herein named, during his lifetime and while in good health. No agent of this association is authorized to make, fill up, or alter any such application ; in doing any such act he is to be taken and considered as the agent of the applicant and not of the association.'

"13. On or about December 23, 1895, the plaintiff sustained injuries from the falling of parts of a bridge upon which he was working, which rendered him permanently and totally disabled.

"14. While the said policy was in full force and effect, and on or about the —— day of ——, 1896, the plaintiff in writing notified the company of his injuries and disability, offered to surrender his policy and requested the payment of $1000 in full discharge and settlement of his policy.

"15. On or about the 15th day of June, 1896, the defendant company sent to plaintiff a form of 'Proof of Disability,' to be by the plaintiff filled out and returned to the company. This statement, among other things, called for a statement of the place and date of plaintiff's birth. The plaintiff caused this blank form to be duly and regularly filled out and in the same stated that he was born in Sweden, December 18, 1849, and on the 18th day of June, 1896, forwarded the blank so filled out to the defendant company.

16—9 KAN. APP.

"16. The defendant company thereupon wrote to five other persons who were acquainted with the plaintiff, requesting from them information regarding the character of the plaintiff and his injuries, and received from each of said persons a statement in writing that the plaintiff was totally and permanently disabled. The defendant did not ask for or receive any further information or make any further investigation with regard to plaintiff's claim or injuries.

"17. On the 25th day of June, 1896, while the said policy was in full force, the plaintiff, through his attorney, forwarded the said policy to the defendant company for surrender and cancelation, and again requested in writing the payment to him of the sum of $1000, in full discharge and settlement of his claim under said policy, and on June 30, 1896, the defendant company returned the policy to plaintiff.

"18. The medical director of the defendant company and its board of directors examined the proofs submitted by the plaintiff and the statements aforesaid secured by the defendant company, and were not satisfied that the plaintiff had become totally and permanently disabled, and on August 4, 1896, the defendant company notified the plaintiff that his claim for total and permanent disability under his policy was disallowed.

"19. The last payment of premium made by the plaintiff on said policy was received by the agent of the company at Lawrence and transmitted to the company about the last of July, 1896, and has since been retained by the defendant company.

"20. On the —— day of ——, 189—, the plaintiff commenced this action in the district court of Douglas county, Kansas, to recover the said sum of $1000.

"21. The defendant company never raised the question of the false statement as to the age of the plaintiff contained in the application until during the trial of this cause in the district court."

The court, as its conclusion of law upon the above facts, found that " the plaintiff is not entitled to recover."

The plaintiff filed his motion for a new trial, which was overruled, and presents the case to this court for review.

*George J. Barker*, and *Louis C. Poehler*, for plaintiff in error.

*Alford & Clingman*, for defendants in error.

The opinion of the court was delivered by

McELROY, J.: There is but one question presented by the record in this case, and that is, Did the trial court render the proper judgment upon the findings of facts? The plaintiff instituted this action by filing his petition on the 4th day of October, 1896. The defendant insurance company, on the 16th day of March, 1897, filed its answer, consisting of a general denial, admitting its corporate existence and that it issued the policy sued on, and alleging that plaintiff incurred the disability, if such disability existed, through his own negligence and carelessness. Afterward, during the trial of the case, on May 27, 1897, the defendant company amended its answer by alleging: "That by the terms of the policy the application of said plaintiff for insurance in the Ohio Valley Protective Union, and his application for a transfer to this defendant company, which said applications were in writing, are made a part of said contract of insurance, and the truthfulness of said statements are warranted by the said plaintiff, and that in each of said applications said plaintiff did state that he was born October 18, 1850, when in fact he was born October 18, 1849, by reason of which false and material statements said policy is wholly void and of no effect." Thereafter the plaintiff amended his reply, which consisted of a general denial, by averring, among

other things, "that the discrepancy in the age of the insured was a mistake of the agent of the company in taking the same down, and that after the company had full notice and knowledge of the mistake it received and retained premiums from the insured."

Any untrue statement in an application for insurance, made a part of the policy, and warranted to be true, when the application is made the basis of the contract of insurance, avoids the policy, regardless of the question of its materiality. This principle is announced in *Modern Woodmen v. Von Wald*, 6 Kan. App. 231, 49 Pac. 782; *Jeffries v. Life Insurance Company*, 22 Wall. 49, 22 L. Ed. 833; *Ætna Life Ins. Co. v. France et al.*, 91 U. S. 510, 23 L. Ed. 401. It appears, however, that an insurance company may waive its right to insist upon a forfeiture. The trial court found that plaintiff was born December 18, 1849, but that his application for insurance erroneously stated that he was born December 18, 1850. He was, therefore, one year older than he was represented to be in the application. This error was in the first application through no fault of the insured. It does not appear how the error was carried into the second application. The plaintiff, on December 23, 1895, sustained injuries from the falling of a bridge, which rendered him permanently and totally disabled. The insurance company was notified of the injuries sustained by plaintiff, and on the 15th day of June, 1896, forwarded to him a form of proof of disability to be filled out and returned to the company. This blank form called for information as to the place and date of the birth of the insured. The plaintiff, on the 18th day of June, filled out the blank, setting out, among other things, that he was born in Sweden, December 18, 1849, and returned it to the company. The insurance company made further inquiry among the

neighbors of the insured as to his character, and as to the extent of his injuries. The plaintiff thereafter, through his attorneys, forwarded the policy to the defendant company for cancelation, and requested, in writing, the payment to him of the sum of $1000, in full settlement of his claim under the policy. The proofs submitted by plaintiff were examined by the medical directors of the defendant company and its board of directors; they found the same unsatisfactory, and the company notified plaintiff that his claim for total disability under the policy was disallowed. Afterward, about the last of July, 1896, the plaintiff paid another instalment of premium due upon the policy, which was retained and kept by the company.

In June, 1896, the insurance company was informed that plaintiff was born December 18, 1849, instead of 1850, as set forth in his application; in July it collected and retained the premium due; in August it investigated the statements, the proof of loss, and declined to pay the insurance upon other grounds, upon the contention that plaintiff was not totally disabled; and on the 16th day of March, 1897, it filed its answer, setting up a general denial and that it was a corporation and issued the policy sued on; that plaintiff incurred said disability, if such disability exists, through the negligence and carelessness of the plaintiff. Not until the 27th day of May, 1897, during the trial of the action, did the defendant company seek to avoid the effect of the policy by reason of plaintiff's age not being correctly stated in the application for insurance.

It appears that the insurance company by its conduct waived the right to insist upon a forfeiture of the contract of insurance by reason of the erroneous statement of the age of the insured. The plaintiff is entitled to judgment upon the findings of facts for the

amount due under the terms of the policy of insur-
ance.

The judgment is reversed, with direction to the
trial court to enter judgment upon the findings of facts
for the plaintiff in error.